## Commonwealth v. Swan

C.P. of Blair County, no. 2008 CR 2152.

*Daniel Kiss, assistant district attorney,* for Commonwealth.

*Mark Zearfaus,* for defendant.

CARPENTER, *P.J.,* November 3, 2010—This matter comes before the court for resolution after a trial by court on July 8, 2010. The court conducted a view of the subject area of the railroad tracks on July 29, 2010. Briefs were received by August 28, 2010, and the case is ready for resolution. The facts are as follows.

On May 23, 2008, Agent Dale DeLozier, employed by Norfolk Southern, received a call relating to activity on the railroad tracks in the City of Altoona. An observer had seen two individuals dumping material onto the tracks at a location near 20th Street and 9th Avenue, across from Boyer Candy.

Upon investigating the report, Agent DeLozier found that a plaster material had been deposited on two sets of tracks in the reported location. When DeLozier traced the license plate of the car observed at the dumping site, the

plate was traced to defendant James Swan. A few days later, a second railroad agent reported a second incident of dumping on another section of the tracks. This time the dumping activity was recorded on a surveillance video of the Altoona Regional Health System. The tape showed two individuals dumping material from a plastic tub onto the railroad tracks near 26th Street and 9th Avenue, behind the Bon Secours campus of Altoona Regional Health System (formerly Mercy Hospital).

On June 6, 2008, Agent DeLozier spoke to Swan about the materials on the tracks. Swan admitted to the dumping activity advising he was doing a "community service" by building railroad crossings for pedestrians.

At trial, we learned Swan selected the location near Boyer Candy because it was near the St. Vincent DePaul food kitchen. The pedestrian tunnel under the tracks there had been closed, and Swan testified there was no way for pedestrians to cross the tracks to get to the food kitchen. Regarding the second location behind Bon Secours, Swan selected it because he had seen many people over the years cross that section of the tracks to get medical aid at the hospital. Swan's intention was not only to build crosswalks but to bring attention to his belief that the public has a right of way over the tracks.

Norfolk Southern was aware there were trespassers on the tracks, but Agent DeLozier stated he issues citations to only four or five pedestrians a year (often giving warnings rather than citations). In this case, Norfolk Southern was required to have the material removed from the two

locations at a cost of three hundred ($300.00) dollars per track, resulting in a total clean-up cost of nine hundred ($900.00) dollars and citations were issued.

Defendant Swan currently stands charged with counts 5 through 11 of the criminal information, all graded as summary offenses. Counts 5, 6, and 7 are three counts of criminal mischief under 18 Pa.C.S.A. § 3304(a)(2); counts 8, 9, and 10 are three counts of defiant trespass under 18 Pa.C.S.A. §3503 (b)(1)(ii); and count II is a charge of scattering rubbish pursuant to 18 Pa.C.S.A. §6501 (a)(1). We now consider each offense in the order charged.

## CRIMINAL MISCHIEF

Under 18 Pa.C.S.A. 3304(a)(2):

A person is guilty of criminal mischief if he intentionally or recklessly tampers with tangible property of another so as to endanger person or property.

The Commonwealth maintains there is uncontroverted testimony that Swan placed material between the rails to build a "walkway" and that this constitutes tampering either intentionally or recklessly with property. The Commonwealth concedes it "does not contend that it was Swan's intent to harm the rail line or NFS property; however, the Commonwealth does contend that his actions recklessly created a risk of harm to NFS property" (Commonwealth's Brief, p.1, lines 11-13).

Defendant Swan argues his actions did not endanger

either person or property so he cannot be found guilty of the offense (Defendant's Brief, p. 1, lines 5-8).

Based on the testimony presented, the photographs admitted into evidence, and our view of the property, we find Swan tampered with property of the railroad. Swan admitted he built the crosswalks using plaster made from sand from an old building (Testimony 7/8/10, at 2:31). This constitutes tampering with railroad property.

We also find Swan tampered with the property of the railroad intentionally. Swan stated he saw his actions as something he could do for the community (Testimony 7/8/10, at 2:16). Swan stated numerous times during his testimony he believes in the public right of way, and he was trying to "bring the issue to court to have the court show the railroad that people do have a right of way" (Testimony 7/8/10, at 2:27). Swan stated his "hope" that "the railroad would be forced to negotiate in a proper manner and try to get proper crossings" (Testimony 7/8/10, at 2:27).

Swan sought to get the railroad and the court's attention when he placed the plaster on the tracks. Swan voiced this when he testified, "If I win this case, that would show at least one person had the right of way" (Testimony, 7/8/10 at 2:33). While we understand Swan viewed his act as a community service, we cannot condone this form of self help. On the contrary, to do so would be to "legalize" an otherwise illegal act simply because it was committed in the spirit of protest.

The intent required for Swan to be found guilty of criminal mischief is only the intent to tamper with the

railroad's property (either recklessly or intentionally). We find the facts and Swan's admissions sufficient to meet this burden.

Finally, we believe the placement of the plaster on the tracks endangered the property of the railroad. Plaster from an old building dumped upon railroad tracks is a potential danger. Further, Norfolk Southern was required to undertake a clean-up effort to return their property to the condition it was in before Swan placed the plaster on the tracks.

Accordingly, since all the elements of criminal mischief were proven by the Commonwealth, we must find defendant James Swan guilty of violating 18 Pa.C.S.A. § 3304(a)(2).

## DEFIANT TRESPASS

Under 18 Pa.C.S.A. 3503 (b)(1)(ii), defiant trespass, is defined as follows:

A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by posting in a manner prescribed by law or reasonably likely to come to the attention of intruders.

The commonwealth argues Swan is a trespasser because he had no permission from the railroad to be on the tracks. The commonwealth maintains that, "[A] rail line is in and of itself all the warning necessary, particular to a grown, intelligent individual such as Swan. By their

very [nature] rail lines are dangerous places. Warning signs, fences, or other measures are often not placed along other dangerous places such as construction sites. However, that does not prevent an individual from being considered a trespasser" (Commonwealth's Brief, p. 2, lines 22-25).

At the outset, we note the distinct difference between the classification of a trespasser under our civil law and the criminal charges at issue. The dispositive issue in a criminal case is whether the area is posted, not whether defendant Swan knew he was not privileged to enter upon the tracks.

The commonwealth suggests the "very nature of the rail lines" requires the defendant to be found guilty of defiant trespass if he admits to being present on the tracks. We disagree. On the contrary, the statute requires the property to be posted so the defendant has notice he was trespassing.

The court did a view of this property on July 29, 2010. We physically inspected the tracks and the location surrounding the tracks. We saw no posted signs giving notice to pedestrians that crossing the tracks was prohibited. In fact, we observed several footpaths suggesting the tracks were frequently crossed by pedestrians.

The testimony also establishes the property was not posted. Although Agent DeLozier placed "No Trespassing" signs on certain areas of the tracks in 2000/2001 and 2006/2007, the signs were removed and none existed in the areas where Swan placed the

plaster material on the tracks (Testimony 7/8/10, at 2:03). Swan testified he never observed signs in either location (Testimony 7/8/10, at 2:23). Without evidence the property was posted, we cannot find the defendant guilty of Defiant Trespass in violation of 18 Pa.C.S.A. 3503 (b)(1)(ii). This finding should not be construed by the defendant (or anyone else) as the court establishing a "public right of way." Instead, it is a finding that the commonwealth failed to prove an element of the offense.

## SCATTERING RUBBISH

Under 18 Pa.C.S.A. § 6501(A)(1):

A person is guilty of an offense if he causes any waste paper, sweepings, ashes, household waste, glass, metal, refuse or rubbish, or any dangerous or detrimental substance to be deposited into any road, street, highway, alley or railroad right of way, or upon the land of another or into the waters of the Commonwealth.

The defendant does not dispute he is guilty of scattering plaster refuse on the property of the railroad. The defendant's brief states, "As the defendant admitted that he did in fact place household waste onto the railroad tracks when constructing his crossings, the undersigned cannot argue that defendant is not guilty of that charge." Given this admission, we find defendant Swan guilty of Scattering Rubbish in violation of Under 18 Pa.C.S.A. § 6501(A)(1). We enter the following:

## ORDER

And now, November 3, 2010, as to counts 5, 6, and 7, we find defendant James Swan guilty for acts of criminal mischief under 18 Pa.C.S.A. 3304(a)(2); we also find defendant guilty as to count 11 for violating 18 Pa.C.S.A. §6501(a)(1) by scattering rubbish on the railroad tracks. We find defendant Swan not guilty of defiant trespass under 18 Pa.C.S.A. 3503 (b)(1)(ii).

In reaching this decision, we acknowledge our findings are undoubtedly disappointing in some respects to the parties.

From the commonwealth's perspective, they were seeking a ruling from the court which would establish the principle that simply crossing railroad property (whether posted or not) constituted "trespassing." We deny that precedent. Instead, we require the railroad (just as we would any property owner) to put people on notice by posting they may be trespassing. This is especially relevant in this particular case since we know from the defendant's testimony that he believed he had the right as a member of the public to cross the tracks. Given that belief, posting takes on particular significance.

We understand the defense may be frustrated by our ruling as well. In acting as he did, defendant Swan sought a ruling from this court (whatever the criminal consequences) which would establish the public's right to cross the subject railroad tracks. We simply do not reach that issue on the facts of this case. Generally,

criminal proceedings are not the proper forum to establish civil rights. Rather, they require a determination whether the commonwealth has proved the elements of a particular statute "beyond a reasonable doubt." As a result, the decision in this case on the trespassing counts comes down to the fundamental basics of criminal law as opposed to broader civil liberties.

As to the criminal mischief and scattering rubbish violations, the court has a responsibility to protect railroad tracks for their intended purpose of moving trains safely from one point to another. We would be remiss if we allowed people to tamper with those tracks in any fashion given the potentially disastrous results of that tampering (no matter how well intended an individual actor may be).

The trespassing is another matter. Given the absence of posting, defendant Swan is not guilty. The court is not in a position to discuss "larger" issues such as the railroad's right to deny pedestrians a right of way or the public's rights within a right of way. We would direct defendant Swan to other means i.e., working with city hall and the railroad as a more appropriate forum than the criminal court. We understand the defendant has already attempted this and believes he was unsuccessful. However, an initial lack of success does not mean this is not the proper way to proceed. Most changes are accomplished only with persistence and occur by evolution and not revolution.

Consistent with the above, we sentence the defendant as follows:

## ORDER

And now, this November 3, 2010, in light of the above, we sentence as follows:

1. On one count (count 5) of criminal mischief (consolidating the three counts since they are one course of conduct) we fine the defendant one-hundred dollars ($100) and the cost of prosecution.

2. On the count of scattering rubbish, we fine the defendant one-hundred dollars ($100) together with the cost of prosecution.

3. The defendant shall make restitution to the railroad in the amount of nine-hundred dollars ($900) for the required "clean up."

4. All of the sums are to be paid within one year of this date through the Blair County Office of Cost & Fines.

Finally, in the interest if completeness, we acknowledge the absence of discussion of the case law provided by counsel in this opinion. This does not mean we ignored counsel's cases or that we conducted no research of our own. On the contrary, the absence of case citations illustrates both the limited scope of our inquiry and counsel's own admissions that the case law which they cited was of limited relevance at most.